# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

ANTHONY JOHNSON                                    CIVIL ACTION

VERSUS                                             NO. 21-595-JWD-RLB

LOUISIANA DEPARTMENT OF
PUBLIC SAFETY AND CORRECTIONS, ET AL.

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on October 5, 2022.

RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

ANTHONY JOHNSON                                    CIVIL ACTION

VERSUS                                             NO. 21-595-JWD-RLB

LOUISIANA DEPARTMENT OF
PUBLIC SAFETY AND CORRECTIONS, ET AL.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the Motion to Dismiss filed on behalf of defendants Louisiana Department of Public Safety and Corrections, James Arnold, and Luke Rheams (R. Doc. 15). The Motion is opposed. *See* R. Docs. 19 and 27.

The *pro se* plaintiff, an inmate incarcerated at Louisiana State Penitentiary ("LSP") filed this proceeding, against the moving defendants, complaining that his constitutional rights were violated in connection with a strip search. He seeks monetary relief.

The defendants assert, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that the plaintiff has failed to state a claim upon which relief may be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, *supra*, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows that, "where the well-pleaded facts do not

permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id*. at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id*. at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Id*. (citation omitted). Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).

In his Complaint, as amended, the plaintiff alleges the following: On or about February 1, 2021, the plaintiff was ordered to submit to a completely nude strip search. The search was recorded by a female officer. The plaintiff was ordered to bend over, cough, lift his genitals, and spread his arms and legs wide while his back was to the camera. Defendants Arnold and Rheams were both present. Defendant Rheams ordered both the search and for the female officer to record the search after she initially refused. Defendant Rheams smiled during the entire event. Plaintiff alleges that department policies forbid the presence of female officers during a strip search of a male offender.

Due to the harassment, humiliation, and embarrassment suffered the plaintiff is suffering from a physiological injury which requires him to take medication so he can sleep without

having nightmares about defendant Rheams. The plaintiff has also suffered a setback in his rehabilitation.

The defendants assert that they are entitled to qualified immunity in connection with the plaintiff's claims. The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 F. App'x. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.*

Undertaking the qualified immunity analysis, the Court finds that the defendants' motion should be granted. The plaintiff's allegations, accepted as true, fail to state a claim upon which relief may be granted.

**Plaintiff's Eighth Amendment Violation Claims**

Although Plaintiff alleges that the presence of a female guard during the strip search was a violation of both his Fourth and Eighth Amendment rights, the Fifth Circuit is clear "that the Fourth and not the Eighth Amendment governs searches of prisoners." *Hutchins v. McDaniels*, 512 F.3d 193, 196 (2007); *see also Moore v. Carwell*, 168 F.3d 234, 235 (5th Cir. 1999) ("We hold ... that the Fourth Amendment, rather than the Eighth Amendment, applies to this type of

prisoner search."). Accordingly, to the extent that Plaintiff asserts Eighth Amendment claims, it is recommended that these claims be dismissed.

## Plaintiff's Fourth Amendment Violation Claims

"Strip and body cavity searches are 'searches' of 'persons' under the meaning of the Fourth Amendment" and as such, must be reasonable. *Henry v. Hulett*, 969 F.3d 769, 776 (7th Cir. 2020); *Bell v. Wolfish*, 441 U.S. 520, 558 (1979). There is no explicit definition used to determine when a search is reasonable or unreasonable; instead, each case "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails," which requires an examination of "the scope of the particular intrusion, the manner in which it was conducted, the justification for initiating it, and the place in which it was conducted." *Id.* at 559.

Although a search under the Fourth Amendment must be reasonable, Fifth Circuit jurisprudence is clear that "reasonableness" in the prison context is analyzed using a different standard. Because of the exaggerated safety concerns in prisons, "[c]ourts ordinarily should defer to prison officials, if a policy is reasonably related to legitimate security objectives and there is no substantial evidence to indicate that prison officials have exaggerated their response to security considerations." *Parker v. Woods*, 834 F. App'x 92, 95 (5th Cir. 2020). Therefore, because of the great deference afforded to prisons, the "burden of proving reasonableness [in the prison context] is a light burden." *Elliot v. Lynn*, 38 F.3d 188, 191 (5th Cir. 1994). Moreover, "[w]hen evaluating the security policies adopted by prison administrators, the court is not required to apply a least restrictive means test." *Id.*

In evaluating a prisoner's claim for an unconstitutional search, the court must first look to whether the prison had a legitimate need to perform the search. *Bell*, 441 U.S. at 546. Courts

have said that "[a] detention facility is a unique place fraught with serious dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence." *Id.* at 540. Accordingly, courts have explained that "[c]ontrolling the flow of contraband and ensuring institutional security are legitimate penological objectives." *Lewis v. Sec'y of Pub. Safety & Corr.*, 870 F.3d 365, 368 (5th Cir. 2017).

With regards to the presence of a female guard, no constitutional violation occurs when naked male inmates are viewed by female guards if the presence of the female guards is required to protect a legitimate government interest such as maintaining security at a facility. *Oliver v. Scott*, 276 F.3d 736,746 (5th Cir. 2002); *Barnett v. Collins*, 940 F.2d 1530 (5th Cir. July 31, 1991) (referred to in *Oliver* as "unpublished but precedential"). No case has held that the incidental viewing of naked male inmates by female officers who are in the vicinity of a strip search is unconstitutional. *See also West v. Parker*, 68 F.3d 466, 1995 WL 581496 (5th Cir. August 23, 1995) (female officer given "unrestricted access" to male inmates' dormitory, an open room with shower, urinal, and commodes in plain view; inmate did not show that guard's presence was unnecessary to maintain security and so there was no basis for a constitutional claim); *Petty v. Johnson*, 193 F.3d 518, 1999 WL 707860 (5th Cir. August 25, 1999) (*citing Letcher v. Turner*, 968 F.2d 508, 510 (5th Cir. 1992), in rejecting a challenge to a policy of allowing female guards to be present when male inmates are showering or otherwise naked). By contrast, a situation in which a female officer carries out strip searches of male offenders herself, despite the fact that male officers were present and could have done so, potentially states a constitutional claim where no emergency circumstances exist justifying the strip search. *Moore v. Carwell*, 168 F.3d 234, 237 (5th Cir. 1999).

In the district court's opinion in *Oliver*, the U.S. District Court for the Northern District of Texas stated as follows:

> Other than a general complaint regarding the strip search policy, Plaintiff identifies no specific search of his body by a female guard that occurred at Dawson during the time it was operated by Defendant CCA. The only administrative grievance filed by Oliver during this time, on January 15, 1998, concerns female officers observing male inmates in the shower and bathroom areas, (Def. App. at 7), and does not point to a specific unconstitutional search. Therefore, Plaintiff has failed to allege, or to not provide any evidence, that he was subject to an unconstitutional strip search while he was incarcerated under the supervision of CCA, and his claim must be dismissed.

*Oliver v. Scott*, Civil Action No. 3:98cv2246, 2000 WL 140745, (N.D.Tex., *aff'd* 276 F.3d 736 (5th Cir. 2002). Like the plaintiff in that case, the plaintiff herein does not allege that the strip search was carried out by a female guard, a circumstance which may potentially be a constitutional violation.

The fact that the female guard was not just merely present, but also videoed the search is not of constitutional significance. *See Hubbert v. Myers*, No. 92-1232, 1993 WL 326707 (6th Cir. Aug. 26, 1993) (affirming summary judgment against a plaintiff who alleged that the defendants "conducted a strip search which was taped by a video camera operated by a female employee" in violation of the Fourth, Eighth, and Fourteenth Amendments); and *Johnson v. Hutton,* No. 07-cv-0195 (N.D. Tx. May 18, 2009), 2009 WL 1392598 (claim that search conducted by male guard but videoed by a female guard dismissed as frivolous). The Court is aware of no holding that operating a video camera is any different than being present and observing (as opposed to actually conducting the search). As such, the plaintiff's Complaint, as amended, fails to state a claim for a violation of his Fourth Amendment rights.

**Plaintiff's Other Potential Claims**

To the extent the plaintiff makes reference to a violation of prison rules, the law is clear that "a prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process." *Stanley v. Foster*, 464 F.3d 565, 569 (5th Cir. 2006), *quoting Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *Jackson v. Cain*, 864 F.2d 1235, 1253 (5th Cir. 1989). As to any of the plaintiff's allegations that may be interpreted as seeking to invoke the supplemental jurisdiction of this Court over potential state law claims, a district court is authorized to decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims would substantially predominate over the claims over which the court has original jurisdiction, if the court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, having recommended dismissal of Plaintiff's federal claims, the Court further recommends that supplemental jurisdiction be declined in connection with Plaintiff's potential state law claims.

## RECOMMENDATION

It is the recommendation of the Magistrate Judge that the Court decline the exercise of supplemental jurisdiction, and that defendants' Motion to Dismiss (R. Doc. 15) be granted, dismissing the plaintiff's claims with prejudice. It is further recommended that the plaintiff's Motion for Appointment of Counsel (R. Doc. 14) be denied as moot.

Signed in Baton Rouge, Louisiana, on October 5, 2022.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**