UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ANTHONY JOHNSON

VERSUS

LOUISIANA DEPARTMENT OF
PUBLIC SAFETY AND CORRECTIONS,
ET AL

CIVIL ACTION

NO. 21-595-JWD-RLB

## RULING AND ORDER

This matter comes before the Court on the *Motion in Limine for Relief Under Rule 37(e)* ("*Motion in Limine*") (Doc. 101) filed by Plaintiff Anthony Johnson ("Plaintiff" or "Johnson"), which seeks jury instructions as to the spoliation of evidence, seeks to permit Plaintiff to examine witnesses at trial as to the failure to preserve evidence, and seeks to allow an adverse inference jury instruction. (Doc. 101 at 1.) Defendant Luke Rheams ("Rheams" or "Defendant") has filed a *Memorandum in Opposition to Plaintiff's Motion in Limine* ("*Opposition*") (Doc. 107), and Plaintiff filed *Plaintiff's Reply Memorandum in Support of Motion in Limine for Relief Under Rule 37(e)* ("*Reply*") (Doc. 108). A hearing was held on August 13, 2025. (Doc. 110.) For the reasons given below, the Court grants the *Motion in Limine*.

I.  **BACKGROUND**

Plaintiff Anthony Johnson is incarcerated at the Louisiana State Penitentiary. (Doc. 101-1 at 5.) On February 1, 2021, Defendant Rheams, who is a corrections colonel, entered Plaintiff's cell block and stopped before his closed cell door, where he was joined by Captain James Arnold and Officer Paulisha Reed. (*Id.*) Reed "pulled an object from her pocket, which she held in front of and away from her body, pointing toward the cell as she stood next to Rheams and Arnold." (*Id.*) Plaintiff's cell door was opened and he, shackled, "emerged to be led away." (*Id.*) Plaintiff asserts that this exchange was "captured on video from a camera mounted at the end of the tier[,]"

1

which has a fixed view and does not provide audio. (*Id.* at 6.) Plaintiff refers to this video as the "Tier Video." (*Id.*)

According to Plaintiff, "during that exchange, Rheams ordered him to be strip-searched . . . in the presence of a female officer without an exigent circumstance or any valid penological reason, in violation of prison policy and the Fourth Amendment." (*Id.*)

The Court previously granted a Motion to Dismiss filed by the Louisiana Department of Public Safety and Corrections, James Arnold, and Luke Rheams. (Docs. 30, 32.) The Fifth Circuit affirmed the dismissal as to the Louisiana Department of Public Safety and Corrections because Plaintiff failed to brief any argument renewing those claims and also affirmed the dismissal of his Eighth Amendment challenge, but it vacated and remanded the dismissal of Plaintiff's Fourth Amendment challenge to the strip search. (Doc. 47.) The Court then granted in part the renewed Motion to Dismiss by James Arnold and Luke Rheams, dismissing Plaintiff's claims for violations of prison rules and compensatory damages. (Docs. 49, 53.) The Court later granted summary judgment as to Defendant Arnold. (Docs. 86, 88.) All that remain are Plaintiff's § 1983 claims against Rheams. (Doc. 100 at 1–2.)

A hearing was held on August 13, 2025, at which Luke Rheams, Paulisha Reed, and Tammy McDonald of the Louisiana State Penitentiary were called to testify. (Doc. 110 at 1.)

## II.  PARTIES' ARGUMENTS

### A.  Plaintiff's *Motion in Limine* (Doc. 101)

Plaintiff argues that Defendants failed to properly preserve a recording of his strip search, which he argues is critical evidence for the jury trial set for September 22, 2025. (Doc. 101 at 1.) He therefore urges the Court to "(1) instruct the jury that Defendants failed to preserve evidence they were obligated to retain; (2) allow Johnson to examine witnesses at trial on that failure; and

2

(3) instruct the jury that it may infer the missing recording was unfavorable to Defendants, if it first finds they acted with intent to deprive." (*Id.*)

Plaintiff argues that Defendant Rheams "ordered him to be strip-searched . . . in the presence of a female officer without an exigent circumstance or any valid penological reason, in violation of prison policy and the Fourth Amendment." (Doc. 101-1 at 6.) He contends that this warrants nominal and punitive damages because "Rheams violated his constitutional right to be free from an unreasonable search with reckless or callous indifference to those rights." (*Id.* at 6–7.)

According to Plaintiff, the best evidence of Defendant's motivations would be his own words, as captured on "an audio-video recording of Rheams speaking those words." (*Id.* at 7.) Plaintiff argues that "the device that Reed brought to the scene—a body-worn camera—did[]" record audio, unlike the fixed Tier Video, which did not capture audio. (*Id.*) Plaintiff presents screenshots from the Tier Video purporting to show Reed holding the hand-held camera. (*Id.*) According to Plaintiff, there has never been any dispute that Reed "was at the scene of the strip search of a male inmate, or that she recorded the search with a hand-held camera." (*Id.*) Indeed, Plaintiff argues, defense counsel "confirmed his understanding that the device Reed can be seen holding in the Tier Video was a prison-issued body-worn camera that she was using as a handheld camera to record the interaction with Johnson." (*Id.* at 9.) Plaintiff asserts that the video has never been produced despite a prior pro se motion to compel, filed before Plaintiff obtained counsel and denied "in large part on the Defendants' counsel's unsubstantiated assertion in opposition to the motion that they 'currently do not have the body camera footage in their possession.'" (*Id.* at 8 (citing Doc. 83).) According to Plaintiff, "defendants have never been required to commit to writing exactly *why* they do not possess and cannot produce the Reed Video." (*Id.*)

3

Plaintiff argues that "[o]fficials at the Louisiana State Penitentiary, including the individual defendants in this lawsuit, had sole and exclusive custody over the recording device itself, as well as (surely) sole and exclusive access to the hardware and software systems responsible for extracting and saving the Reed Video." (*Id.* at 8.) Likewise, Plaintiff argues, Louisiana State Penitentiary officials had "sole authority over the creation and enforcement of the audio-video recording policy" and "sole and exclusive control over the retention of the Reed Video, including the decision to suspend any regular destruction or 'overwrite' schedule." (*Id.*)

Plaintiff asserts that the handheld camera used a digital recording system that should be governed by Rule 37(e) of the Rules of Civil Procedure. (*Id.* at 9.) He argues that "[c]ourts across the country have considered the spoliation of video recordings as the loss of electronically stored information (ESI) under Rule 37(e)." (*Id.* at 9–10 (citing *Johns v. Gwinn*, 503 F. Supp. 3d 452, 463 (W.D. Va. 2020); *Vega v. Broome Cnty.*, No. 9:21-cv-788, 2023 WL 6318919 at *7 (N.D.N.Y. Sept. 28, 2023)).)

Plaintiff argues that Rule 37(e) "authorizes sanctions where: (1) the ESI should have been preserved in anticipation of litigation, (2) it was lost because reasonable preservation steps were not taken, (3) the information cannot be restored or replaced through other discovery, and (4) its loss causes prejudice to another party." (*Id.* at 10 (citing Fed. R. Civ. P. 37(e)(1); *Owens v. Bd. of Supervisors of LSU*, 695 F. Supp. 3d 750, 756 (M.D. La. 2023)).) Consequently, Plaintiff asserts, the Court must evaluate: (1) whether there was a duty to preserve the ESI; (2) whether it was lost due to a failure to take reasonable preservation steps; (3) whether the lost data can be restored or replaced; (4) whether its loss has prejudiced the other party; and (5) whether the loss was the result of intent to deprive[,]" all of which he argues are met here. (*Id.* at 11.)

4

Plaintiff argues that "in the corrections context, a duty to preserve may attach when an inmate is involved in an incident known to the prison (such as a fight) or when an inmate files grievances about such an incident." (*Id.* (citing *Bistrian v. Levi*, 448 F. Supp. 3d 454, 469 (E.D. Pa. 2020)).) He contends that "litigation was plainly foreseeable[]" because Plaintiff "initiated a complaint soon after[]" Defendant "Rheams authored and signed a formal disciplinary report concerning the encounter." (*Id.*) In addition, Plaintiff asserts, "a disciplinary hearing was held just three days later." (*Id.* at 11–12.) Plaintiff points to "the rapid sequence of internal documentation and inmate complaint," which he contends "provided more than enough notice to trigger the duty to preserve relevant evidence, including the camera footage recorded at the scene." (*Id.* at 12.) Plaintiff also argues that the "Reed Video was captured by a handheld device brought *specifically* to [] Johnson's cell for the purpose of recording his strip-search[,]" which he asserts makes it "uniquely probative evidence, and it's implausible that the officers involved would not have appreciated its significance." (*Id.*) Consequently, Plaintiff argues, "the duty to preserve arose by no later than February 1, 2021, and that Defendants failed to meet it." (*Id.*)

Next, Plaintiff argues that the video constitutes "relevant, irreplaceable ESI" that was within the exclusive control of prison officials. (*Id.*) He argues that "[i]t would appear that the loss stems from human action (or inaction). . . . Yet no explanation has ever been offered, under oath or otherwise, as to when, why, or how the footage became unavailable. And no documentation of its retention status exists." (*Id.* at 13.) In addition, Plaintiff argues, "the missing evidence goes to the heart of this case." (*Id.* at 14.) He contends that his remaining claim, for punitive damages under § 1983, relies on whether Rheams acted with "'reckless or callous indifference' to his constitutional rights[,]" which "turns on the defendant's subjective mindset." (*Id.*) Plaintiff argues that "[n]o piece of evidence would speak more directly to that than an audiovisual recording of

5

Rheams's tone, words, and demeanor at the time of the search." (*Id.*) He asserts that he "faces the task of persuading the jury to credit his version of events over Rheams's, without the benefit of neutral, contemporaneous evidence." (*Id.*) "Under these circumstances," Plaintiff argues, "Defendants failed to take reasonable steps to preserve ESI they knew or should have known was critical to this litigation." (*Id.*)

Next, Plaintiff argues, there is no way to recreate the audio from the Reed video. (*Id.*) This loss, he contends, has prejudiced his case because it "deprives Johnson of the single most probative source of evidence to challenge Rheams's account of the strip search." (*Id.* at 15.) As a result, Plaintiff argues, the Court should give the jury instructions informing them of the Reed video, that it was not preserved, and that Louisiana State Penitentiary officials had a duty to preserve the video but failed to do so. (*Id.* at 16–17.) In addition, Plaintiff notes that the Court may allow the jury to consider intent under Rule 37(e)(2). (*Id.* at 18–20.)

### B.  Defendant's *Opposition* (Doc. 107)

Defendant, on the other hand, argues that he did not have exclusive control over the Reed Video. (Doc. 107 at 1.) He asserts that "Plaintiff has not, and cannot, provide any evidence that Luke Rheams was ever in the custody or control of the body camera footage such that he was capable of acting or failing to act in such a way as to cause the loss of the footage." (*Id.* at 2.) Defendant argues that the video was taken by Reed rather than Rheams, and Plaintiff therefore seeks "jury instructions which would prejudice Defendant Rheams for acts outside of his control taken by one or more nonparties." (*Id.* at 3.)

Defendant acknowledges that Reed had a duty "to inform Investigative Services of the recording and provide the body camera to Investigative Services. Once provided with the camera, Investigative Services is then obligated to download, maintain, and archive the footage." (*Id.*)

6

However, Defendant argues, "[a]t no point in the process of preserving the body camera footage would Defendant Rheams have been involved or in control or possession of either the body camera or the footage[,]" and therefore "it cannot be said that any duty to preserve the footage would have attached to him." (*Id.*) Instead, Defendant argues, "Paulisha Reed was responsible for providing Investigative Services with her body camera." (*Id.* at 4.) Defendant asserts that "there were no official steps for Rheams to fail to take with regard to the preservation of the video." (*Id.*)

In addition, Defendant argues that there was no prejudice to Plaintiff as a result of the loss of the body camera footage, and that "Plaintiff's argument as to prejudice from the missing body camera footage . . . places the proverbial cart before the horse." (*Id.*) According to Defendant, "the primary issue left for trial in this matter is determining if Plaintiff's Fourth Amendment rights were violated by resolution of the disputed justification for the strip search of Plaintiff." (*Id.*) Defendant asserts that the Reed Video did not begin "until after Plaintiff and Rheams had already begun interacting[]" and therefore "would not show the instigating cause for the search of Plaintiff and would not bear on the primary question of if the search was justified and, thus, allowable under the Fourth Amendment." (*Id.* at 5.) As a result, Defendant argues, the "lack of body camera footage will not prejudice Plaintiff in proving his only actual remaining claim." (*Id.*)

Defendant alternatively argues that if the Court does find prejudice, it should find that "Defendant Rheams is equally prejudiced by this lack of footage and the inability to offer a neutral depiction of events to show a lack of malice on his part." (*Id.*) Defendant argues that he "should not be further prejudiced by instructions to the jury which may imply or directly instruct the jury to infer that this missing video is adverse to Rheams due to the acts or omissions of nonparties with regard to evidence that was never in his possession or control." (*Id.*) Defendant contends that "no remedial measures are warranted under Rule 37(e)(1) as Plaintiff has not been prejudiced by

7

the loss of the body camera, and to the degree that the Court finds that Plaintiff has been prejudiced, the loss of the video was not caused by a party to this litigation and particularly not by Rheams." (*Id.* at 6.) He argues that if the Court does require remedial jury instructions, they should be more limited than those Plaintiff requests, which Defendant contends "inherently imply fault on the part of Rheams as an 'official' of Louisiana State Penitentiary." (*Id.*) Defendant asserts that this "attempts to circumvent Rule 37(e)(2)'s requirement that there be a finding of intent to deprive by the party in order for the jury to be instructed that it may presume the footage would be unfavorable to Rheams." (*Id.*)

According to Defendant, "Plaintiff has provided no evidence whatsoever to show intent on the part of Rheams." (*Id.* at 7.) Defendant argues that "Plaintiff's alleged PREA complaints arising from the strip search conducted by Rheams were investigated within one day of the incident and that report only mentioned video surveillance footage, not body camera footage." (*Id.*) Defendant argues that if Plaintiff were to be allowed to examine witnesses at trial on the topic of intent, it would be "a fishing expedition in [an] attempt to discover direct or circumstantial evidence which Plaintiff cannot currently provide and should not be allowed." (*Id.*)

C. **Plaintiff's *Reply* (Doc. 108)**

In reply, Plaintiff argues that "[t]he Rule 37(e)(1) standard is already satisfied[,]" and that "[w]hat's really at issue is whether the elevated sanctions of Rule 37(e)(2), which require the Court to conclude the video was lost with the *intent* to deprive Johnson of its use, will turn on the evidence received at the upcoming hearing." (Doc. 108 at 1–2.) Plaintiff argues that "the law is clear that responsibility for preserving key evidence cannot be avoided by pointing fingers within the agency." (*Id.* at 2.) Plaintiff points to the grievance he filed regarding the search Defendant Rheams ordered recorded, as well as the formal disciplinary report Rheams authored and the

8

investigation that began within 24 hours, as events that "provided sufficient warning to trigger preservation duties." (*Id.* at 2–3 (citing *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015); *Owens*, 695 F. Supp. 3d at 756).) Plaintiff argues that the Reed Video "was deliberately created, at Rheams's instruction," and that Rheams then "made no effort to ensure its preservation." (*Id.* at 3 (citing *Estate of Bosco by and Through Kozar v. County of Sonoma*, 640 F. Supp. 3d 915, 927–28 (N.D. Cal. Nov. 14, 2022)).) Plaintiff argues that the video "is now irretrievably lost[,] . . . cannot be restored or replaced, and its loss followed a clear failure to preserve after the duty attached." (*Id.*) As a result, he argues, "all elements of Rule 37(e) are satisfied." (*Id.*)

Plaintiff again argues that the loss of the Reed Video "significantly undermines Johnson's ability to prove his claim[]" and "[t]hat prejudice warrants relief under Rule 37(e)(1), including permitting the jury to consider the duty to preserve and the failure to meet that duty, and to draw appropriate conclusions." (*Id.* at 4.)

Plaintiff contends that Defendant "misstates the law[]" in arguing that Rheams "cannot be sanctioned because he did not personally delete or control the Reed Video." (*Id.*) Instead, Plaintiff asserts, "spoliation sanctions are proper where the party had control over the evidence, the duty to preserve it, and failed to take reasonable steps to do so." (*Id.* at 5.) Plaintiff points to a case from the Eastern District of Pennsylvania where "[a]lthough the defendant officer did not personally control the system, the court found he had the ability to request preservation and that institutional failures did not insulate him from consequences." (*Id.* (citing *Tolbert v. Baldwin*, No. 2:22-cv-1182, 2025 WL 1361284 at *4–5 (E.D. Pa. May 9, 2025)).) Likewise, the Northern District of New York found that sanctions were appropriate where body-camera footage "was within the control of [individual defendants'] agency, [] litigation was reasonably foreseeable, and [] no meaningful steps were taken to ensure preservation[,]" even though those individually named defendants had

9

not themselves deleted or mishandled the ESI. (*Id.* (citing *Vega*, 2023 WL 6318919 at *10).) Plaintiff also points to the Western District of Virginia, which "rejected the argument that a correctional officer could avoid spoliation consequences simply because he did not personally control the lost video evidence." (*Id.* at 5 (citing *Johns*, 503 F. Supp. 3d at 463–64).) Plaintiff asserts that the court there "found that spoliation sanctions were appropriate under Rule 37(e) because the video was controlled by the institution, the officer was a supervisory employee, and the prison's internal grievance process had already highlighted the video's relevance." (*Id.* at 6 (citing *Johns*, 503 F. Supp. 3d at 463).) According to Plaintiff, Rheams likewise exercised supervisory authority over Reed, who created the video using her state-issued camera at Rheams' direction. (*Id.*) He argues that the video, camera, and all storage equipment were "within the exclusive control of the institution." (*Id.*) Plaintiff argues that Rheams' and the prison's failures to take any reasonable steps or accountability for the loss of the video "justify further inquiry into intent." (*Id.* at 7 (citing *Matthews v. New York State Dep't of Corrections and Cmty. Supervision*, No. 9:17-cv-503, 2023 WL 2664418 at *13 (N.D.N.Y. Mar. 28, 2023)).)

### III.  LEGAL STANDARDS

Rule 37(e) of the Federal Rules of Civil Procedure provides:

> **(e) Failure to Preserve Electronically Stored Information.** If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>> (A) presume that the lost information was unfavorable to the party;

> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> (C) dismiss the action or enter a default judgment.

"[P]arties have an obligation to preserve, through 'reasonable steps,' electronic evidence for trial." *Calsep A/S v. Dabral*, 84 F.4th 304, 310 (5th Cir. 2023) (citing Fed. R. Civ. P. 37(e)). "[I]f a party 'destr[oys]' or 'meaningfully alter[s] evidence,' otherwise known as 'spoliation,' a court may sanction them." *Id.* at 310 n.4 (quoting *Guzman*, 804 F.3d at 713). Before issuing sanctions, however, "a court must first find that (1) the troublemaker 'acted with the intent to deprive [the other] party of the information's use,' (2) there was 'prejudice to [the other] party from loss of the information,' and (3) the sanction is 'no greater than necessary to cure the prejudice.'" *Id.* at 310–311 (quoting Fed. R. Civ. P. 37(e)).

The Fifth Circuit "permits an adverse inference or sanctions against the spoliator only upon a showing of 'bad faith' or 'bad conduct.'" *Ford v. Anderson Cnty.*, 102 F.4th 292, 323 (5th Cir. 2024) (citing *Guzman*, 804 F.3d at 713). "If a party raises a claim of spoliation, 'a court may give an adverse-inference instruction' or sanction the party that altered or destroyed evidence upon a showing of bad faith." *United States v. Martinez*, 131 F.4th 294, 315 (5th Cir. 2025) (quoting *United States v. Rodriguez-Sanchez*, 741 F. App'x 214, 221 (5th Cir. 2018) (per curiam); citing *King v. Ill. Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003)). "Bad faith, in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence." *Guzman*, 804 F.3d at 713 (citing *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998)).

## IV.   ANALYSIS

"Generally, a party to litigation has a duty to preserve evidence once 'the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant.'" *Disedare v. Brumfield*, No. 22-2680, 2024 WL 1526699 at *6 (E.D. La. Apr. 9, 2024)

11

(quoting *Guzman*, 804 F.3d at 713; citing *Grant v. Gusman*, No. 17-2797, 2020 WL 1864857 at *9 (E.D. La. Apr. 13, 2020); *Falkins v. Goings*, No. 21-1749, 2022 WL 17414295 at *3 (E.D. La. Dec. 5, 2022)). "The duty to preserve material evidence arises not only during litigation, but also during the period before litigation when a party knew or should have known that litigation was imminent." *Dixon v. Greyhound Lines, Inc.*, No. 13-179, 2014 WL 6087226 at *2 (M.D. La. Nov. 13, 2014). "[T]he duty to preserve 'extends to . . . information that is relevant to the claims and defenses of any party, or which is relevant to the subject matter involved in the action.'" *Disedare*, 2024 WL 1526699 at *6 (quoting *Consol. Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 339 (M.D. La. 2006) (internal quotation omitted)). Furthermore, "[t]his duty of preservation extends to all employees likely to have information relevant to the litigation, who are regarded as 'key players' in the litigation." *In re Bertucci Contr. Co., L.L.C.*, No. 12-664, 2014 WL 5483707 at *2 (E.D. La. Oct. 29, 2014) (citing *Consol. Aluminum Corp.*, 244 F.R.D. at 339).

In the pleadings, Defendant argued that "[a]t no point in the process of preserving the body camera footage would Defendant Rheams have been involved or in control or possession of either the body camera or the footage[,]" and therefore "it cannot be said that any duty to preserve the footage would have attached to him." (Doc. 107 at 3.) However, Defendant acknowledged that Reed did have a duty to preserve the Reed Video. (*Id.* at 3–4.)

At the hearing on August 13, Defendant Rheams testified that he had supervisory authority over Reed and called her over to Plaintiff's cell for the express purpose of recording video footage of the strip search. (Doc. 116 at 36.) He stated that he had the authority to request either of Reed or Investigative Services that the Reed Video be saved, but he denied that he had the responsibility to do so. (*Id.* at 33–34, 36–37.)

Colonel Tammy McDonald of Investigative Services testified that when the incident took place in 2021, LSP's policy was that if something significant occurred during a correction officer's shift, the supervisor of the officer involved was responsible for bringing any relevant body camera to Investigative Services to look through footage. (*Id.* at 63.) She acknowledged that this would include Defendant Rheams. (*Id.* at 65–66.) When asked who determined whether an incident is significant, McDonald stated that it would be the supervisor—here, Defendant Rheams. (*Id.* at 65.)

Plaintiff initiated a grievance against Defendant Rheams on the same day as the interaction. (Doc. 101-1 at 5.) As soon as he did so, Rheams was on notice for potential litigation, which would require him to take actions to preserve the Reed Video. In addition, Plaintiff brought this suit in October of 2021. (Doc. 1.) McDonald testified that body camera footage is typically retained for three to five years before being deleted or written over. (Doc. 116 at 73.) If Rheams was somehow unaware of potential litigation arising from this incident prior to October of 2021, he was certainly on notice when the suit was filed—and despite this, Rheams testified that he never checked if the Reed Video was saved, never asked it to be preserved, and never made any attempt to ensure its preservation. (*Id.* at 25, 33–34.) In fact, Rheams never once mentioned the video in the course of the prison investigations into the incident. (*Id.* at 25–35.) According to Rheams, his purpose in asking for the Reed Video was to protect Rheams and other prison officials in case the incident escalated to the point that officials used chemical agents, leading to an investigation. (*Id.* at 19, 28–30, 35–37.)

According to Defendant, the Reed Video does not, at this point, exist. McDonald suggested that it may have never existed, arguing that Reed may have believed she was recording but only recorded audio, or have accidentally recorded herself rather than the incident in question. (*Id.* at 62–63, 74–75, 77–78, 83–87, 101, 108–110.) However, no such recording from February 1, 2021,

13

has ever been produced—and indeed, Plaintiff argues that this video is important not only for what it might show but for the audio it contains. (Doc. 101-1 at 7.) If an audio-only version exists, or a version with audio but an irrelevant video, that too would be ESI that must be turned over. Reed never reported any issues with her body camera's ability to record properly. (Doc. 116 at 92–93, 109–110.) She testified that she believed she was recording. (*Id.* at 42–43, 45–49, 53–55.)

Furthermore, McDonald testified that no footage was found from February 1, 2021. (*Id.* at 74, 101–102.) According to McDonald, the computer disc and storage that would have contained videos recorded on that day was corrupted. (*Id.* at 88, 102–106.) McDonald could not identify the range of dates that were corrupted, did not know with certainty that this date was corrupted, and did not know what other files were corrupted, but she had been told by other officials at LSP that this file, specifically, was corrupted. (*Id.* at 103–106.)

Rheams' testimony makes clear that he ordered the Reed Video made, had constructive control over it as Reed's supervisor, and had the responsibility to bring the video to Investigative Services. He did not bring the Reed Video to investigative services, took none of the steps outlined in LSP policies to ensure the Reed Video was preserved, and, crucially, failed to disclose the existence of the Reed Video throughout multiple investigations.

The Fifth Circuit has approvingly cited to *Rimkus Consulting Group, Inc. v. Cammarata* for its "detailed analysis of spoliation sanctions." *Rodriguez-Sanchez*, 741 F. App'x at 221 (citing *Rimkus*, 688 F. Supp. 2d 598, 611–20 (S.D. Tex. 2010)). In *Rimkus*, the Southern District of Texas explained that "[d]etermining whether sanctions are warranted and, if so, what they should include, requires a court to consider both the spoliating party's culpability and the level of prejudice to the party seeking discovery." *Rimkus*, 688 F. Supp. 2d at 613. It noted that "[c]ulpability can range along a continuum from destruction intended to make evidence unavailable in litigation to

14

inadvertent loss of information for reasons unrelated to the litigation[,]" while "[p]rejudice can range along a continuum from an inability to prove claims or defenses to little or no impact on the presentation of proof." *Id.*

Rheams' intentional and repeated failure to disclose the existence of the video during earlier internal investigations, as well as his explanation that the video was intended as protection and exculpation for prison officials rather than evidence for an inmate, all show that he intended to hide the Reed Video. The disappearance of the Reed Video following this pattern of activity from Rheams allows the Court to find an intent to make the evidence unavailable for litigation. *See id.*

Prejudice, on the other hand, is largely not in question. Defendant denies that the Reed Video is relevant to the litigation, arguing that because it began after the search was ordered, it would not have any pertinent information as to the motive for the search. (Doc. 107 at 5.) However, a reasonable trier of fact could find that "the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Rimkus*, 688 F. Supp. 3d at 616 (citing *Zubulake v. UBS Warburg LLC (Zubulake IV)*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003)). "The 'relevance' and 'prejudice' factors of the adverse inference analysis are often broken down into three subparts: '(1) whether the evidence is relevant to the lawsuit; (2) whether the evidence would have supported the inference sought; and (3) whether the nondestroying party has suffered prejudice from the destruction of the evidence.'" *Id.* (quoting *Consol. Aluminum Corp.*, 244 F.R.D. 335, 346 (M.D. La. 2006) (citing *Concord Boat Corp. v. Brunswick Corp.*, No. LR-C-95-781, 1997 WL 33352759 at *7 (E.D. Ark. Aug. 29, 1997))). Here, the Reed Video would contain the audio of the encounter in dispute. It would give a contemporaneous window into Defendant's motivations in ordering the strip-search, which is

crucial to Plaintiff's claim. Therefore, Plaintiff's ability to show Defendant's motive is prejudiced by the loss of the Reed Video.

Likewise, Defendant's argument that he is equally prejudiced by the loss of the video is unavailing. (*See* Doc. 107 at 5.) Defendant, unlike Plaintiff, was a supervisory prison official. (Doc. 116 at 7–8.) He requested that the video be created, had access and constructive control of the evidence for at least some period of time, and could have requested that the evidence be preserved at any point. (*Id.* at 10, 13, 15–17, 63–66.)

Plaintiff has shown that Rheams had a duty to preserve the Reed Video, that he failed to do so, and that he acted with an intent to make the Reed Video unavailable. Plaintiff has shown both culpability and prejudice.

## V.   CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Motion in Limine for Relief Under Rule 37(e)* filed by Plaintiff Anthony Johnson is **GRANTED**.

**IT IS FURTHER ORDERED** that the Court will impose the following sanctions under Rule 37(e)(1):

- The Court will allow Plaintiff to present evidence and argument to the jury regarding the loss of the ESI after the grievance was filed;

- The Court will instruct the jury that the Defendant under a duty to preserve the ESI but failed to do so;

- The Court will instruct the jury that it may presume the lost ESI was unfavorable to the Defendant.

The Court finds these sanctions are necessary, but not greater than necessary, to cure the prejudice Plaintiff has experienced as a result of Defendant's failure to preserve ESI that should have been preserved and to deter such conduct by LSP officials in the future.

Signed in Baton Rouge, Louisiana, on <u>September 4, 2025</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**